309 Ga. 764
FINAL COPY

S20A0880. SCOTT v. THE STATE.

PETERSON, Justice.

Jonathan Peter Scott appeals his convictions for malice murder and other offenses in relation to the shooting death of Gerald Daniels.[1] Scott argues on appeal that the evidence was insufficient

[1] The crimes occurred on February 17, 2016. In May 2016, a Fulton County grand jury indicted Scott for malice murder (Count 1), felony murder predicated on burglary (Count 2), felony murder predicated on aggravated assault (Count 3), felony murder predicated on attempt to purchase marijuana (Count 4), two counts of felony murder predicated on possession of a firearm by a convicted felon (Counts 5 and 6), burglary (Count 7), aggravated assault on Daniels (Count 8), aggravated assault on Omar Parks (Count 9), attempt to purchase marijuana (Count 10), possession of a firearm during the commission of a felony (Count 11), and two counts of possession of a firearm by a convicted felon (Counts 12 and 13). Prior to trial, the trial court granted Scott's request to bifurcate Counts 6 and 13. Following a jury trial in April 2017, Scott was found guilty on Counts 1 through 5 and 7 through 12, and the State then nolle prossed Counts 6 and 13. The trial court sentenced Scott to life without the possibility of parole for malice murder (Count 1), consecutive 20-year terms for burglary (Count 7) and aggravated assault (Count 9), a consecutive ten-year term for attempt to purchase marijuana (Count 10), and consecutive five-year terms for the two firearm offenses (Counts 11 and 12); the remaining charges were merged or vacated by operation of law. Scott filed a timely motion for new trial, which he subsequently amended with new counsel. Following a hearing, the trial court denied Scott's motion for new trial. Scott filed a timely appeal, and his case was docketed to this Court's April 2020 term and submitted for a decision on the briefs.

to support his convictions and that there was a fatal variance between the indictment charging him with attempt to purchase marijuana and the evidence presented at trial. Scott also argues that his trial counsel was ineffective. We affirm because the trial evidence was sufficient to establish Scott's guilt, and Scott has not established that he was affected by any variance or that his trial counsel was ineffective.

Viewed in the light most favorable to the jury's verdicts, the trial evidence showed the following. Daniels sold drugs out of his Fulton County apartment. Scott, a convicted felon, also lived in the same apartment complex.

On February 17, 2016, Omar Parks, then a high school student who regularly visited Daniels, left his school during the day and went to Daniels's apartment. Parks purchased marijuana from Daniels and spent the rest of the day at Daniels's apartment smoking marijuana and playing video games. That afternoon, Scott went to Daniels's apartment and purchased 3.5 grams of marijuana. Scott returned sometime later, complaining that Daniels had

shorted him on the weight. Daniels responded that he gave Scott the proper amount. Scott asked for more marijuana to make up for the alleged shortage on weight, and Daniels agreed. Daniels wrapped the marijuana in two small sacks and handed Scott the sacks along with some money. Scott dropped one of the sacks and asked Daniels to pick it up.

When Daniels bent down to pick up the sack, Scott pulled out a gun; seconds later, Scott shot Daniels multiple times. Scott then began searching cabinets inside Daniels's apartment, noticed Parks for the first time, and pointed a gun at Parks. Parks was able to escape through the back door; he got in his car and drove away from the apartment complex. An officer responded to the shooting, as did paramedics, who pronounced Daniels dead. Daniels died of multiple gunshot wounds to his head and torso.

A neighbor, Kendrick Brown, saw Scott leave Daniels's apartment earlier in the afternoon and return to the apartment around 7:00 p.m. Brown heard gunshots a few minutes after Scott's return.

Parks eventually talked to the police and told them about the shooting. At the time, Parks gave a physical description of the shooter, whom Parks knew only as "Red." Parks later identified Scott as the shooter during a photographic lineup and also identified Scott at trial.

1. Scott argues that the evidence was insufficient to sustain his convictions because there was no physical evidence showing that he was at the scene of the crime at all, much less that he committed the murder. He also argues that his conviction rests primarily on the testimony of Parks and Brown, who were not credible witnesses.[2] Scott's claim fails.

When evaluating the sufficiency of evidence, we must determine whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. *Jackson v. Virginia*,

---

[2] Scott also argues that the verdict was contrary to law and principles of justice and equity, but the decision to grant a new trial on these grounds is vested solely in the trial court. See *Bundel v. State*, 308 Ga. 317, 318 (1) (840 SE2d 349) (2020). When such a claim is raised on appeal, we review only whether the evidence was sufficient to support the jury's verdict. Id.

443 U.S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979). In making that determination, "we view the evidence in the light most favorable to the verdict, and we put aside any questions about conflicting evidence, the credibility of witnesses, or the weight of the evidence, leaving the resolution of such things to the discretion of the [jury]." *Wilkerson v. State*, 307 Ga. 574, 574 (837 SE2d 300) (2019) (citation and punctuation omitted). "As long as there is some competent evidence, even [if] contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld." *Coley v. State*, 305 Ga. 658, 661 (2) (827 SE2d 241) (2019) (citation and punctuation omitted).

Here, Parks testified at trial about Daniels's killing in the apartment and identified Scott as the shooter at trial; Parks also identified Scott as the shooter during a photographic lineup prior to trial. Brown testified that he saw Scott enter Daniels's apartment a few minutes before Brown heard gunshots.

Scott acknowledges that the testimony of a witness is generally sufficient to establish a fact. See OCGA § 24-14-8. He nevertheless

argues that the testimony of Parks and Brown was not sufficient in this case because Parks's testimony was self-serving and not credible and Brown's testimony also was not credible and only partially corroborated Parks's testimony by placing Scott near the scene of the crime. Scott also complains that there was no physical evidence showing that he committed any crime. Scott's arguments are unavailing, because "the lack of corroboration with physical evidence only goes to the weight of the evidence and the credibility of the testifying witness, which is solely within the purview of the jury." *Johnson v. State*, 296 Ga. 504, 505 (1) (769 SE2d 87) (2015) (citation and punctuation omitted). The jury was authorized to resolve these issues adversely to Scott and to find beyond a reasonable doubt that he was guilty of the crimes of which he was convicted. See *Taylor v. State*, 303 Ga. 624, 626 (1) (814 SE2d 353) (2018).

2. Scott argues that there was a fatal variance between the indictment and the evidence presented at trial, because he was charged with attempted purchase of marijuana while the evidence

at trial established a completed drug transaction. Scott points to Parks's testimony that Scott went to Daniels's apartment to purchase marijuana from Daniels and left after receiving some marijuana. Even if there were a deviation between the allegations in the indictment and the evidence presented at trial,[3] there was no fatal variance.

In determining whether there is a fatal variance between the indictment and the trial evidence, we must focus on "whether there has been such a variance as to affect the substantial rights of the accused." *Roscoe v. State*, 288 Ga. 775, 776 (3) (707 SE2d 90) (2011) (citation and punctuation omitted). Generally, there is no fatal variance if the allegations inform the accused as to the charges against him so as to enable him to present his defense and not be taken by surprise by the evidence at trial, and are adequate to protect the accused against another prosecution for the same

---

[3] Parks also testified that Scott returned to the apartment asking for more marijuana, and although Daniels tried to give Scott more, Scott dropped some of the marijuana before shooting Daniels.

conduct. See *Atkins v. State*, 274 Ga. 103, 105 (3) (549 SE2d 356) (2001).

Scott has not established a fatal variance. He has not even alleged how the indictment impaired his ability to present a defense or that he would be subjected to prosecution for a completed offense, as opposed to the attempted purchase. Indeed, "[a] person may be convicted of the offense of criminal attempt if the crime attempted was actually committed in pursuance of the attempt but may not be convicted of both the criminal attempt and the completed crime." OCGA § 16-4-2. Because Scott could have been convicted of criminal attempt when the attempted crime was actually successfully completed, he cannot show that he was surprised by the trial evidence. And because OCGA § 16-4-2 precludes a conviction for both the criminal attempt and the completed crime based on the same conduct, Scott also cannot show that he could be subjected to another prosecution for the same offense. Therefore, his fatal variance claim fails.

3. Scott argues that his trial counsel was ineffective in several

ways. To prevail on any of his claims, Scott must show both that his counsel's performance was constitutionally deficient and that he was prejudiced by this deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687 (104 SCt 2052, 80 LE2d 674) (1984). Scott has not carried this high burden.

To establish deficient performance, Scott must "overcome the strong presumption that counsel's performance fell within a wide range of reasonable professional conduct, and that counsel's decisions were made in the exercise of reasonable professional judgment." *Mims v. State*, 304 Ga. 851, 855 (2) (823 SE2d 325) (2019) (citation and punctuation omitted). To demonstrate prejudice, Scott must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. (citation and punctuation omitted). "[D]ecisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if they were so patently unreasonable that no competent attorney would have followed such

a course." *Richards v. State*, 306 Ga. 779, 781 (2) (833 SE2d 96) (2019) (citation and punctuation omitted). Our inquiry focuses on the objective reasonableness of counsel's performance, not counsel's subjective state of mind. See *Bozzie v. State*, 302 Ga. 704, 714 (5) (808 SE2d 671) (2017).

If Scott fails to meet his burden in establishing one prong of the *Strickland* test, we need not review the other, because a failure to meet either of the prongs is fatal to an ineffectiveness claim. See *Smith v. State*, 296 Ga. 731, 733 (2) (770 SE2d 610) (2015). In considering an ineffectiveness claim, we review a trial court's factual findings for clear error and its legal conclusions de novo. *Lawrence v. State*, 286 Ga. 533, 534 (2) (690 SE2d 801) (2010).

(a) Scott argues that his trial counsel was ineffective for failing to object to inadmissible evidence of Daniels's good character: evidence that (1) Daniels played basketball with neighborhood children, (2) walked one girl to school, and (3) was well-liked by neighbors. Scott has failed to show that trial counsel's failure to object to this evidence was objectively unreasonable.

At trial, the State elicited the good character evidence after it had already introduced testimony through at least two witnesses that Daniels was a drug dealer who sold marijuana to a high school student (Parks). The State concedes that the good character evidence was inadmissible because Scott had not first placed Daniels's character into issue. See *Revere v. State*, 302 Ga. 44, 48-49 (2) (a) (805 SE2d 69) (2017) (under OCGA § 24-4-404 (a) (2), the State may not introduce character evidence of the victim unless the defendant first introduces evidence of a pertinent character trait of the victim or evidence that the victim was the aggressor). But our inquiry does not end merely because counsel could have lodged a successful objection.

At the motion for new trial hearing, trial counsel testified that she did not remember "if [the evidence] even hit my radar," stating that the evidence was not "particularly good." She further explained that she did not believe that the evidence of Daniels's good character "was going to move the jury at all" after it already had heard testimony that Daniels carried a firearm and was a drug dealer who

sold drugs to a teenager. Trial counsel also stated that she typically would not make every conceivable objection at trial and would make only those objections that would help a defendant's case, explaining that the jury would begin to "turn on" an attorney who persistently objected. Given trial counsel's explanations, Scott has failed to show that counsel's failure to object to the good character evidence was objectively unreasonable. See *Richards*, 306 Ga. at 782-783 (2) (b) (decision to forgo objecting to testimony regarding victim's good character was objectively reasonable because the evidence did not speak to the defendant's involvement in the murder and counsel thought that objections would not be well received by the jury).

(b) Scott next argues that trial counsel was ineffective for failing to object to evidence showing that Scott was a convicted felon who recently had been released from prison, thereby improperly placing his character in issue. Again, Scott has failed to show that trial counsel's failure to object was objectively unreasonable.

At trial, the prosecutor asked the detective investigating Daniels's murder about some of the steps he took in his

investigation. The detective said that he received an initial tip that the assailant went by the name "Pete" and recently had been released from prison. The detective also said that after he received another tip that the shooter's name was "Jonathan Scott," he searched that name on the "Department of Georgia — the public website," and found a photograph of "Jonathan Pete Scott" that matched a witness's description.

Although the detective did not place Scott's character in issue by saying that he found Scott's photograph on a "Department of Georgia" website, his statements taken as a whole could be understood to imply that Scott had recently been released from prison. But trial counsel testified at the motion for new trial hearing that she did not believe that the detective's testimony was damaging because evidence of Scott's prior felony conviction eventually would be introduced at trial. Indeed, Scott was on trial not only for murder but also one count of possession of a firearm by a convicted felon, and trial counsel ultimately stipulated to Scott's status as a convicted felon. Under these circumstances, trial counsel was not

deficient for failing to object to the detective's passing reference to Scott's criminal history. See *Brown v. State*, 307 Ga. 24, 33 (6) (a) (834 SE2d 40) (2019) (investigator's passing and non-responsive reference to identifying the defendant in a jail database did not amount to improper character evidence, and trial counsel's failure to object did not amount to deficient performance); *Phillips v. State*, 285 Ga. 213, 218 (5) (a) (675 SE2d 1) (2009) (trial counsel not deficient for failing to object to prosecutor's opening statement that the defendant was a convicted felon where the defendant was facing a charge of being a convicted felon in possession of a firearm during the commission of a crime).

(c) Scott argues that trial counsel was ineffective for failing to challenge Brown's credibility about his ability to legally carry a firearm. Again, counsel was not deficient.

At trial, Brown testified on direct examination that he grabbed his gun after hearing gunshots and that he had a license to carry the gun. On cross-examination, trial counsel again asked Brown about his authorization to carry a firearm.

On appeal, Scott notes that trial counsel admitted at the motion for new trial hearing that she possessed documents at the time of his trial suggesting that Brown was on first-offender probation at the time. Scott argues that trial counsel could have used the evidence to disprove Brown's testimony that he was authorized to legally carry a firearm.[4] See OCGA § 24-6-621 ("A witness may be impeached by disproving the facts testified to by the witness."). But this statutory provision does not provide a party with an unlimited ability to impeach a witness by contradiction.

A party may not use extrinsic evidence to impeach a witness by contradiction on a matter collateral to the material issues at trial. See *Corley v. State*, 308 Ga. 321, 325 (3) (840 SE2d 391) (2020) (relying in part on case law interpreting former OCGA § 24-9-82 because OCGA § 24-6-621 is a carry-over from the old Evidence Code

---

[4] Scott conceded in his motion for new trial that he could not have used the fact that Brown was serving a first-offender sentence to impeach Brown on general credibility grounds. See *Manner v. State*, 302 Ga. 877, 889 (III) (808 SE2d 681) (2017) (enactment of the current Evidence Code did not change the well-established rule that a witness's first-offender record cannot be used as general impeachment evidence).

and has no federal corollary in the Federal Rules of Evidence); see also *Brown v. State*, 260 Ga. 153, 156 (4) (391 SE2d 108) (1990) (under former OCGA § 24-9-82, "a witness may not be impeached based upon a discrepancy relating to a wholly immaterial matter").

Although disproving Brown's ability to legally carry a firearm may have been relevant to his credibility, proving such a discrepancy did not relate to a material issue in the case. Brown's testimony was material only as to whether he saw Scott enter Daniels's apartment and heard gunshots a few seconds later. Any discrepancy about whether or not Brown was legally entitled to carry a firearm on the day of the shooting was purely collateral. See *Corley*, 308 Ga. at 324 (3) (in a murder case where the defendant shot the victim after arguing about the defendant's refusal to return a rental application, the trial court did not abuse its discretion in excluding extrinsic evidence to disprove a witness's claim that he and the victim did not have a rental dispute with a former landlord). As a result, trial counsel was not deficient for failing to use Brown's first-offender record to disprove his claim that he was authorized to

legally carry a firearm. *Chapel v. State*, 270 Ga. 151, 159 (9) (510 SE2d 802) (1998) ("If the evidence was inadmissible, counsel cannot be deficient in failing to present it.").

(d) Scott also argues that the cumulative effect of trial counsel's deficiencies was exacerbated by trial counsel's failure to challenge Parks's credibility adequately. Assessing cumulative prejudice is necessary only when multiple errors have been shown, and Scott has not established even one instance in which trial counsel was deficient. See *Bulloch v. State*, 293 Ga. 179, 183 (2) (744 SE2d 763) (2013) ("[W]e evaluate only the effects of matters determined to be error, not the cumulative effect of non-errors." (citation and punctuation omitted)). To the extent that Scott raises an independent argument regarding trial counsel's cross-examination of Parks, he concedes that he did not raise this ineffectiveness claim below. Such a claim is therefore waived. See *Dunn v. State*, 291 Ga. 551, 553-554 (4) (b) (732 SE2d 524) (2012).

*Judgment affirmed. All the Justices concur.*

Decided September 8, 2020.

Murder. Fulton Superior Court. Before Judge Krause.

*Kevin A. Anderson, Joseph C. Timothy Lewis*, for appellant.

*Paul L. Howard, Jr., District Attorney, Lyndsey H. Rudder, Marc A. Mallon, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Michael A. Oldham, Assistant Attorney General*, for appellee.