**FIRST DIVISION**
**BARNES, P. J.,**
**GOBEIL and PIPKIN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**March 10, 2021**

# In the Court of Appeals of Georgia

A20A1727. DAVIS v. THE STATE.

PIPKIN, Judge.

Appellant Joshua Davis was convicted by a jury of two counts of vehicular homicide, four counts of serious injury by vehicle, driving under the influence, and reckless driving. He appeals following the denial of his motion for new trial, arguing that the evidence was insufficient to convict him, that the trial court erred by admitting evidence of his refusal to submit to blood or urine testing under Georgia's implied consent statute, that the trial court erred by failing to grant a mistrial when the State made allegedly improper closing arguments, and that he was denied effective assistance of counsel at trial. As set forth below, we now affirm.

Construed to support the jury's verdict,[1] the evidence shows that on May 7, 2016, Scott Blake was traveling westbound on McGinnis Ferry Road when he observed an orange and black truck, which, as it was later determined, was being driven by Davis, weave in and out of its lane approximately three to five times. Blake testified that he did not want to be behind the truck because of the erratic driving, so he passed the truck but continued to observe it in his rear view mirror.

Blake turned right onto Old Atlanta Road and observed Davis' truck, which was directly behind him, make the same turn. Blake saw Davis' truck weave outside of its lane of travel a "few" more times, until they reached a point where the road curves "pretty severely" to the right, at which time Davis continued straight into the oncoming lane of travel. Davis' truck then collided "head on" with a "work" truck, which was pulling a Bobcat trailer."[2] Several occupants of the work truck testified that they saw Davis' truck coming toward them in their lane and that their driver, Aldolfo Mendoza, braked and attempted to take evasive action but that they could not get out of the path of the oncoming vehicle because of a guard rail. Blake said he

---

[1] *Jackson v. Virginia*, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

[2] The collision occurred in Forsyth County.

heard Mendoza apply his brakes and saw him steer toward the guardrail, but that it did not appear that Davis applied his brakes or took any action to avoid the collision.

Blake stopped his vehicle and, after observing several people trying to assist the occupants of the work truck, checked on Davis. According to Blake, he knocked on the window to try and get Davis' attention, but Davis did not respond, although Blake could see that he was conscious. Blake attempted to enter the truck, but the driver's side door was jammed shut and the passenger's side door was locked. Concerned because the truck was leaking fluids and smoking, Blake broke out the passenger's side window and opened the door. Blake observed that Davis was bleeding a "little bit" from his lip and appeared to be dazed and "out of it." Blake said the first thing that Davis did when he was out of the vehicle was to ask about the location of his cell phone, and Blake told him it was still in the truck. Davis recovered his cell phone, and then he asked Blake what happened. Blake told Davis what he saw, and Davis told Blake that he had looked down at his phone and the next thing he knew he was on the side of the road. Blake encouraged Davis to sit along the side of the road, but Davis kept trying to go back in his vehicle and even after law enforcement arrived, Davis had to be "repeatedly retrieved" from his vehicle. Blake

3

also testified that Davis did not complain about any injuries and that the only injury he observed was a small trickle of blood on Davis' lip.

Another witness – O'Neil Foster – stopped to render aid. He testified that when he first saw Davis in his truck he appeared to be unconscious, but that after Davis was taken out of the vehicle, he started smoking a cigarette and then he walked around his truck. He testified that Davis appeared to be "nonchalant," and that he did not observe Davis go toward the work truck or attempt to render aid.

Deputy John Christopher Hiott with the Forsyth County Sheriff's office was the first law enforcement officer to arrive on the scene. Deputy Hiott first approached the work truck and ascertained that everyone in the vehicle appeared to have suffered injuries and that Mendoza was entrapped and appeared to be severely injured. Deputy Hiott then approached Davis, who was walking around and seemed "dazed and confused," although when asked, he told Deputy Hiott he was fine. Davis provided his driver's license, but did not comply with Deputy Hiott's repeated requests that he wait outside of his vehicle. Deputy Hiott testified that it appeared that Davis was trying to find something in his truck, looking under the seat, behind the seat, and in the center console; he also observed Davis move objects around in the back of the truck. While Davis initially appeared to be disoriented and confused, by the time

4

Davis was questioned by emergency medical services workers, he did not appear to have any immediately detectable cognitive impairment. Davis was asked several times if he wanted medical treatment, but he declined.

Mendoza was transported to Grady Memorial Hospital where he died from his injuries several weeks later. The passengers of the work truck were transported to another hospital, and two of the passengers were determined to have suffered serious injuries.[3]

Due to the injuries and severity of the accident, Deputy Hiott contacted the traffic specialist unit, and Deputy Andrew Ives of the Forsyth County Sheriff's Office was assigned to investigate the collision. Based on his initial walk-through of the crash cite, Deputy Ives concluded that Davis' vehicle had crossed over the centerline.

After completing his walk through and speaking with Deputy Hiott, Deputy Ives approached Davis. He said that he noticed that Davis had some dried blood on his lip, that he had scratches on his arm, an abrasion on his knee, and an abrasion on his left shoulder and neck consistent with seat belt use. Deputy Ives testified that

---

[3] Mendoza is the named victim in Counts 1 and 2 of the indictment charging Davis with vehicular homicide. The two passengers who suffered significant injuries are named as the victims in Counts 3 through 6 of the indictment charging Davis with serious injury by vehicle.

based on Davis' speech – which he said seemed "somewhat thick and a little slow" – Davis' "unusually" constricted pupils, and the manner in which the crash occurred, Deputy Ives requested another deputy to conduct a DUI investigation while he continued to investigate the crash.

Davis told Deputy Ives that he had reached down to grab his cell phone shortly before the collision, and prior to his arrest, Davis gave law enforcement permission to look at his phone. When Deputy Ives examined the phone, he noticed that it appeared that call and text data from approximately 12:30 p. m. to 4:00 p. m. had been erased from Davis' phone. When asked about the missing information, Davis told police that his fiancee had deleted it the day before. Deputy Ives asked Davis how his fiancee could have deleted information the day before it occurred, and Davis did not have an answer. The phone was taken into evidence and a more extensive analysis was consistent with Davis having deleted information from his phone, which was also confirmed by an examination of Davis' cell phone records.

Deputy Ives' investigation of the crash confirmed his initial impression that the collision was the result of Davis leaving his lane of travel and crossing over into the oncoming lane, at which point he struck the work truck. Deputy Ives also testified that it appeared that Mendoza had attempted to take evasive action to avoid the

6

collision but there was no physical evidence indicating that Davis had braked or otherwise tried to avoid the collision.

Davis was on probation at the time of the collision and had waived his Fourth Amendment rights as a condition of his probation. The parties agreed that a stipulation to that effect would be read to the jury, and the trial court gave a limiting instruction before the State read the stipulation. The stipulation specifically stated that, as part of waiving his Fourth Amendment rights, Davis had consented to testing of his bodily fluids for drugs or alcohol. In addition to the limiting instruction, the stipulation itself advised the jury that the fact that Davis was on probation was introduced only for the limited purpose of explaining the Fourth Amendment waiver and should not be considered for any other purpose.

Deputy Mike Downing, a member of the Forsyth County Sheriff's Office DUI Task Force, conducted the DUI portion of the investigation. Deputy Downing testified that he noticed that Davis had a bloody lip, and observed that Davis' demeanor was casual, appearing somewhat nonchalant. Deputy Downing also noticed that Davis' pupils were pinpointed, but he also noted that Davis was sitting in direct sunlight. He described Davis' speech as "thickened," with a "heavy context of consonant sounds."

7

Deputy Downing asked Davis if he would consent to field sobriety testing. Davis agreed, and Deputy Downing questioned him about any injuries or preexisting conditions that would affect his performance. Davis mentioned that he had been injured in the eye with a stick at an early age, and mentioned his knee being injured in the wreck. Deputy Downing first conducted the horizontal gaze nystagmus ("HGN") evaluation; and Davis exhibited zero clues out of six on the test. Deputy Downing testified that his performance on this test basically eliminated central nervous system depressants, such as alcohol and inhalants, as a cause of impairment. Deputy Downing also had Davis blow into an alco-sensor, and the results indicated Davis was not under the influence of alcohol.

Davis also performed the walk and turn test. On this test, Davis exhibited three out of eight clues indicating possible impairment; Deputy Downing testified that two clues were indicative of impairment. Deputy Downing then had Davis perform the one-leg stand. Davis exhibited three out of four clues on that test, and Deputy Downing testified two out of four clues indicates possible impairment. Deputy Downing also testified that Davis' tongue was green, his eyes were red, and his pupils remained constricted even when sitting in the shade.

8

Based on Davis performance during field testing, his physical manifestations, and what he saw at the crash site, Deputy Downing placed Davis under arrest for being a less safe driver due to being under the influence of cannabis or some sort of narcotic analgesic. Deputy Downing read Davis the implied consent warning and then asked him if he would consent to testing of his blood and urine. Davis refused to take the State's test and stated that his attorney had told him never to take those tests. Davis "passed out" while being transported to jail and had to be awakened several times.

Benjamin Rosser, a probation officer with the Georgia Department of Community Supervision, testified that Davis was requested to give a urine sample for drug screening on the date of the collision and on the following day, and that Davis refused both times.

Sergeant Bobby Francis with the Forsyth county Sheriff's Office, who had been certified as a Drug Recognition Expert, was allowed to testify as an expert in DUI and drug recognition at trial. Sergeant Francis testified that he observed Davis at the detention center and he also reviewed the video recording of Davis performing the field sobriety tests and his contact with officers at the scene. Based on his review of the video, Sergeant Francis opined that Davis was under the influence of a drug to the

9

extent it was less safe from him to drive. Sergeant Francis also noted Davis appeared relaxed despite the severity of the situation, as well as the fact that he appeared to be in a semi-conscious state while being transported to the jail. Sergeant Francis also testified that he personally observed that Davis was drowsy and that his eyes were droopy and his pupils were constricted; according to Sergeant Francis, these manifestations were consistent with Davis having ingested a narcotic analgesic.

Davis also presented several witnesses in his defense – including a nurse at the jail where Davis was incarcerated, an emergency room physician, and an expert in DUI detection – who disagreed that Davis was impaired at the time of the collision. Davis also presented testimony from an expert in accident reconstruction, who opined that Davis would not have had time to react before the collision; the expert acknowledged, however, that Davis crossed the center line before the collision.

1. Davis challenges the sufficiency of the evidence, arguing that there was no true conflict in the evidence and that he should not be held criminally responsible for what he says was just an accident.

When reviewing the sufficiency of the evidence on appeal, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the

10

crime beyond a reasonable doubt." (Citation and punctuation omitted.) *Dunbar v. State*, 309 Ga. 252, 253 (1) (845 SE2d 607) (2020). In making this determination, "we put aside any questions about conflicting evidence, the credibility of witnesses, or the weight of the evidence, leaving the resolution of such things to the discretion of the jury." (Citation and punctuation omitted.) *Scott v. State*, 309 Ga. 764, 766 (1) (848 SE2d 448) (2020).

In essence, Davis seeks to have this Court ignore our standard of review by reweighing the evidence and resolving evidentiary conflicts in his favor, particularly the evidence of his impairment and the evidence concerning how the collision occurred. However, as stated above, these questions are for the jury; "[a]s long as there is some competent evidence, even if contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld." (Citations and punctuation omitted.) Id. Having reviewed the evidence set out above as well as other evidence presented at trial, we conclude the jury was authorized to find beyond a reasonable doubt that Davis was guilty of the crimes of which he was convicted. Accordingly, this enumeration presents no grounds for reversal.

2. Citing *Olevik v. State*, 302 Ga. 228 (806 SE2d 505) (2017), and *Elliott v. State*, 305 Ga. 179 (824 SE2d 265) (2019), Davis argues that the trial court erred by

11

admitting evidence that he refused to submit to a State-administered test of his blood or urine. However, as the special concurrence in *Elliott* points out, the holdings of *Olevik* and *Elliott* are limited to chemical tests of a driver's breath; they do not apply to tests of a driver's blood. *Elliott*, 305 Ga. at 224 (Boggs, J., concurring fully and specially). Subsequently, this Court has addressed whether *Olevik* and *Elliott* prohibited admission of a suspects's refusal to consent to blood testing, and held that it did not. See *State v. Johnson*, 354 Ga. App. 447, 454 (1) (b) (841 SE2d 91) (2020); see also *State v, Voyles*, 355 Ga. App. 903, 904-905 (846 SE2d 170) (2020). And more recently, this Court reached the same conclusion with regards to a State-administered urine test. See *State v. Awad*, 357 Ga. App. 255, 256-257 (1) (850 SE2d 454) (2020).[4] The trial court did not err by admitting evidence concerning Davis' refusal to submit to a State-administered blood or urine test.

3. Davis argues that the trial court should have granted a mistrial after the State made numerous improper arguments during closing. As explained below, none of Davis' claims entitle him to a new trial.

_____

[4] We noted in *Awad* that the decision of whether to admit evidence of the refusal to submit to the state's test might "depend[] on the details of the test." 357 Ga. App. at 258 (1). However, as was the situation in *Awad*, we have no evidence concerning that issue before us, and, accordingly, this is not an appropriate case to parse that issue.

(a) Davis first argues that the State violated the trial court's pre-trial order prohibiting the State from mentioning his probation except in the context of the Fourth Amendment waiver pursuant to the stipulation read to the jury. Specifically, Davis says that the prosecuting attorney violated that order by stating to the jury "Keep in mind, ladies and gentlemen, he is facing more ramification with probation by the refusal. He so badly doesn't want the State to know what's in his system, that he's willing to face w[hat] the consequences are on probation." Davis objected, arguing that the argument referenced facts not in evidence and was improper given the court's limiting instruction prior to the introduction of the Fourth Amendment waiver stipulation. Following Davis' objection, the trial court stated, "That evidence was admitted for a limited purpose. The jury will be given the limiting instruction on that. . . . The jury needs to listen closely to see where it is permissible to draw inferences from that refusal and where it's not permissible to draw inferences from the refusal." The trial court then cautioned the prosecuting attorney to observe those rules, and the prosecuting attorney did not continue that line of argument.

Davis argues that the "jury is not to concern themselves with punishment," and that the State's argument told the jury that Davis was already facing punishment by stating there was "more ramification" because of his probation. However, we cannot

13

see how Davis was harmed by the jury being told that he might be punished because of violating his probation – if anything, the fact that Davis might be facing a double punishment would more logically enure to his benefit than his detriment because the jury might believe that he was going to be punished regardless of whether he was found guilty at trial. Pursuant to the stipulation and the evidence introduced at trial, the jury knew that Davis was on probation and that he had violated his probation by refusing to consent to the State's tests, and we see nothing in the trial court's rulings or the limiting instructions the court gave to the jury that would prevent the State from making arguments concerning inferences drawn from that refusal. The prosecuting attorney did not ask the jury to consider the fact that Davis was already on probation in deciding his guilt or innocence of the current charges or to otherwise hold that against him outside the context of his Fourth Amendment waiver. Counsel is afforded wide latitude in arguing reasonable inferences from the evidence presented to the jury, and Davis has not shown that the State violated any order of the trial court or otherwise interjected impermissible matters into the trial by arguing those inferences here. See *Ford v. Tate*, 307 Ga. 383, 431 (III) (B) (835 SE2d 198) (2019) ("Counsel certainly are permitted to argue reasonable inferences from the

14

evidence presented at trial.") (citation and punctuation omitted). Accordingly, this enumeration presents no reason to grant Davis a new trial.

(b) Davis also argues that the trial court should have granted a mistrial when the State made what he characterizes as burden-shifting arguments by pointing out that Davis failed to introduce proof to support his allegation of a past knee injury that he said impaired his physical ability to perform the field sobriety tests and that he tried to prove a head injury through the testimony of an emergency room doctor instead of a doctor with a specific expertise in head injuries. However, as Davis acknowledges , and the transcript shows, in both instances, Davis failed to object to the State's argument. Accordingly, he has waived consideration of his contention that the trial court erred by failing to grant a mistrial in response to these arguments. See e.g., *Scott v. State*, 290 Ga. 883, 885 (2) (725 SE2d 305) (2012) ("In the appeal of a non-capital case, the defendant's failure to object to the State's closing argument waives his right to rely on the alleged impropriety of that argument as a basis for reversal.") (citation and punctuation omitted); *Shepherd v. State*, 347 Ga. App. 306 (819 SE2d 300) (2018) (failure to object waived appellate review of allegedly improper closing arguments).

Further, such alleged errors are not subject to review for plain error on appeal. *Gates v. State*, 298 Ga. 324, 328-329 (4) (781 SE2d 772) (2016); *Shepherd*, 347 Ga. App. at 307; see also *Brooks v. State*, 309 Ga. 630, 638 (3) (847 SE2d 555) (2020).

(c) Davis argues that the trial court should have granted a mistrial when the State made an improper argument concerning Davis' constricted pupil size. Again, however, Davis has waived consideration of this issue by failing to interpose an objection to the allegedly improper argument at the time it was made. See Division 3 (b).

4. Davis argues he is entitled to a new trial because his trial counsel was ineffective. To prevail on this claim, Davis must prove both that his counsel's performance was professionally deficient and that he was prejudiced by the deficient performance. See *Strickland v. Washington*, 466 U.S. 668, 687 (104 SCt 2052, 80 LE2d 674) (1984).

> To prove deficient performance, Davis must show that his lawyer performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms. Importantly, our inquiry is focused on the objective reasonableness of counsel's performance, not counsel's subjective state of mind. Counsel's reasonableness is evaluated in conjunction with the attendant circumstances of the challenged conduct and judged from counsel's

16

perspective at the time with every effort . . . made to eliminate the distorting effects of hindsight. Thus, deficiency cannot be demonstrated by merely arguing that there is another, or even a better, way for counsel to have performed.

(Citations and punctuation omitted.) *Davis v. State*, 306 Ga. 140, 143-144 (3) (829 SE2d 321) (2019).

It is also incumbent upon Davis to prove prejudice. Thus, in addition to showing deficient performance,

Davis must demonstrate a reasonable probability that, in the absence of counsel's deficient performance, the result of the trial would have been different. As we have said before, satisfaction of this test is a difficult endeavor. Simply because a defendant has shown that his counsel performed deficiently does not lead to an automatic conclusion that he was prejudiced by counsel's deficient performance. An appellant bears the burden of *both* prongs of the *Strickland* test.

(Citations and punctuation omitted.) Id. at 144. It follows that if an appellant fails to satisfy one prong of the *Strickland* test, we do not have to examine the other prong. Id. at 143.

17

(a) Davis argues his trial counsel rendered ineffective assistance by failing to object during closing argument when the State improperly shifted the burden of proof and made conclusory statements about his constricted pupils. .

(i) First, we do not agree that the State's comments about Davis' failure to introduce evidence to substantiate his allegation of a knee injury that impaired his ability to walk and his failure to bring in an expert on head injuries improperly shifted the burden to Davis of proving his innocence. As our Supreme Court recently held, "the prosecutor may properly draw inferences in his argument from the nonproduction of witnesses." (Citation and punctuation omitted.) *Long v. State*, 309 Ga. 721, 728 (2) (a) (848 SE2d 91) (2020). See also *Overton v. State*, 295 Ga. App. 223, 242 (13) (671 SE2d 507) (2008) ("[I]t is not error nor is it improper for a prosecutor to comment upon the defense's failure to rebut the proof presented by the State."). Nothing the State argued suggested that Davis, and not the State, had the burden to prove the elements of the crimes that Davis was charged with committing; rather, the State merely drew inferences from the evidence Davis presented in support of his defense. Accordingly, "because the prosecutor's comments during closing were within the bounds of permissible argument, trial counsel's failure to make a meritless objection

18

to the State's closing argument is not evidence of ineffective assistance." (Citation and punctuation omitted.) *Long*, 309 Ga. at 728 (2) (a).

(ii) Davis also asserts his trial counsel was deficient because he failed to object when the State argued about his allegedly constricted pupils in violation of the trial court's order. However, as the trial court found in the order denying Davis' motion for new trial, the pre-trial hearing transcript shows that the court "ultimately ruled that the introduction of any evidence regarding the correlation between pupil size and drug use would require expert testimony," and the transcript shows that the State did, in fact, put forth such expert evidence through the testimony of Sergeant Francis. Accordingly, the State's argument about Davis' constricted pupil size did not violate the trial court's pre-trial order, and Davis has not shown that his counsel was ineffective for failing to make a meritless objection.

(b) Davis also argues that his trial counsel was ineffective when he failed to object, move for a mistrial, or request a limiting instruction after the State improperly made a statement about causation, "the ultimate issue in the case." The transcript reflects that, while Davis' accident reconstruction expert was testifying about reaction time and braking, the prosecutor posed the following objection:

19

STATE: I'm objecting to any questions being asked about whether or not the victim appropriately braked at all. It is quite obvious from the evidence, even for [the defense witness] that the accident was caused by this defendant crossing the double-yellow line.

The trial court then responded:

TRIAL COURT: Wait, Wait, wait. The Court is going to overrule that objection. These are all issues for the jury to decide, and the Court is not going to rule as to causation. The Court expresses no opinion as to causation. None of my rulings express an opinion as to causation. The Court cannot make a ruling premised upon a finding of causation, that's outside the Court's province and that's the province of the jury.

Davis now argues the trial court's statement was not enough, and that trial counsel was ineffective because he did not request a more specific limiting instruction or move for a mistrial due to the severity of the issue in order to prevent a manifest injustice. Even if we were to presume that trial counsel should have objected – which is a tenuous position – Davis has failed to demonstrate prejudice. The prosecutor's comment came during the course of an objection, and was not in the form of testimony or argument directed to the jury. The jury previously had been given preliminary instructions about the nature of objections by the attorneys and what did and did not constitute evidence, the trial court explained at the time of the objection

20

that it was the jury's duty to determine causation, and the jurors were instructed again before they deliberated concerning what constituted evidence in the case. Thus, Davis has not suffered prejudice due to this failure.

(c) Davis contends that his trial counsel should have objected or moved for a mistrial when a State's witness testified in violation of the trial court's ruling not to mention Davis' probation outside of the Fourth Amendment waiver. As to this issue, the transcript shows that in explaining his current job position, Ben Rosser, one of the probation officers who requested a urine sample for testing, testified that the department he worked for was more commonly known as the felony probation department and that his current caseload involved sex offenders. However, the witness went on to explain that Davis was assigned to another probation office, and during re-direct he explained that he was tasked with conducting the urine screen because Davis' probation officer was female and it would not have been appropriate for her to conduct the test since the officer had to observe procurement of the sample. Further, during cross-examination, Rosser clarified that although his current duties involved overseeing sex offenders, it should not be implied that that Davis was on probation for that type of offense and testimony was again elicited that he was not in fact Davis' probation officer. In light of these clarifications, there is no merit to

21

Davis' contention that the witness' testimony was in violation of the trial court's pre-trial ruling concerning his probationary status. Further, when viewing the witness' testimony in context and in its entirety, Davis cannot establish that he was prejudiced by counsel's failure to object. Davis has thus failed to prove that he is entitled to a new trial due to ineffective assistance of counsel on this basis.

(d) Davis claims ineffective assistance in connection with a statement Davis made to the trial court during sentencing. Although Davis argues on appeal that his trial attorney did not adequately advise him about the implications of making such a statement, the transcript from the hearing on Davis' motion for new trial shows differently, and the trial court rejected his contention. As the trial court found in the order denying the motion for new trial, trial counsel testified that he spoke with Davis several times before he was sentenced. During those conversations, trial counsel cautioned Davis that it would not be the appropriate time to express dissatisfaction with the verdict, and that his plan to "shoot from the hip" was not a good idea. The fact that Davis ignored his counsel's advice does not render counsel's performance deficient.

(e) Lastly, to the extent that Davis has shown more than one instance of deficient performance, we have properly considered the cumulative effect of these

deficiencies and conclude that "the cumulative prejudice from any assumed deficiencies . . . is insufficient to show a reasonable probability that the results of the proceedings would have been different in the absence of the alleged deficiencies." *Davis v. State*, 306 Ga. at 150 (3) (j). Davis is not entitled to a new trial based on his allegations of ineffective assistance of counsel.

*Judgment affirmed. Barnes, P. J., concurs. Gobeil, J., concurs fully in Divisions 1, 2, 3(b), 3(c) and 4 and concurs in the judgment only in Division 3(a).*

.