**FOURTH DIVISION**
**MERCIER, C. J.,**
**DILLARD, P. J., and LAND, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

May 14, 2025

# In the Court of Appeals of Georgia

A25A0270. PETTY v. THE STATE.

LAND, Judge.

After a jury trial, Anaiah Petty was found guilty of two counts of aggravated sodomy and three counts of child molestation. Petty appeals the denial of his motion for new trial, arguing that the trial court's "ministerial officer" failed to timely file his notice of appeal and that the trial court erred in admitting serology results. Petty also argues that his trial counsel rendered ineffective assistance when trial counsel failed to consult with a qualified serology expert and failed to investigate and present evidence of alleged neglect and abuse by the victims by their mother and stepfather, and that the cumulative prejudicial effect of the trial court's error and his trial counsel's deficient performance requires a new trial. We affirm.

"On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, with the defendant no longer enjoying a presumption of innocence." *Reese v. State*, 270 Ga. App. 522, 523 (607 SE2d 165) (2004). We neither weigh the evidence nor judge the credibility of witnesses, but determine only whether, after viewing the evidence in the light most favorable to the prosecution, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis omitted.) *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SCt 2781, 61 LEd2d 560) (1979).

So viewed in favor of the verdict, the record shows that on March 6, 2017, the three juvenile female victims, A. P., K. C., and M. C., were visiting their grandparents' home while on spring break from school. The victims' cousin, Petty, also lived with the grandparents and was at the home that day. When the victims' mother picked up the children, she noticed that the girls were following Petty around the house and she felt that "something wasn't right with the girls." When the victims and their mother returned home, the victims made an outcry that Petty had offered the three victims money and snacks in exchange for him "put[ting] his penis in their mouth[s]." The victims' mother and stepfather became visibly upset with the girls,

and their mother called the grandparents, who insisted on a family meeting to "get the truth" before law enforcement was involved. That same evening, the victims' mother took the victims to the Newton County Sheriff's Office to give a statement. An officer with the Newton County Sheriff's Office was dispatched to take a report. The officer then contacted the on-call Sheriff's Office Investigator as well as the Department of Family and Child Services. Although the three victims had eaten and drunk that day, their mouths were swabbed by the investigator. The swabs were sent to the Georgia Bureau of Investigation ("GBI") Crime Lab to be tested.

On March 20, 2017, the victims participated in recorded forensic interviews with Rebecca Barnett, a forensic interview specialist. Barnett testified at trial that in A. P.'s interview, she was able to give a long, narrative response of what had occurred and was able to include contextual details, including that Petty waved a dollar bill in her face. Barnett also testified that M. C. and K. C. were able to provide contextual details in their interviews and that K. C. circled a penis on an anatomically correct drawing, indicating that she had put her mouth on Petty's penis.

On August 4, 2017, Petty was indicted for two counts of aggravated sodomy and three counts of child molestation. The victims testified consistent with their forensic

interviews. A jury trial resulted in a mistrial due to a hung jury. On April 6, 2018, Petty was indicted for two counts of aggavated sodomy, three counts of enticing a child for indecent purposes, and three counts of child molestation.

At the second trial, all three victims were largely unresponsive to the State's questioning and recanted their prior statements. When asked why she was changing her story, A. P. testified "[b]ecause I don't want to be here[.]" The victims' testimony from the first trial was read into the record and their forensic interviews were played for the jury. During A. P.'s testimony during the first trial, she stated that after Petty made the victims' oatmeal, he called M. C. into a bathroom off the kitchen. M. C. testified during the first trial that Petty "told [her] to suck his private," that she did so, and that she received and ate a snack afterwards. K. P. testified during the first trial that she and A. P. witnessed M. C. on her knees with Petty's penis in her mouth, and that when Petty called her into the bathroom, "he tried to force his thing in my mouth" and that it touched her lips. A. P. testified that when she was called back to the bathroom by Petty, "he kept on telling me to get on my knees . . . to suck his private part" but that she "didn't do it" despite Petty waving a dollar in front of her face and offering her snacks.

4

Following the second jury trial, Petty was found guilty on all counts. Petty filed a timely motion for new trial. After a hearing, the trial court denied Petty's motion for new trial, as amended, on September 16, 2022. This appeal followed.

1. Petty argues that the trial court's "ministerial officer" failed to timely file his notice of appeal. We conclude that Petty's notice of appeal was filed with the trial court on October 4, 2022, such that it was timely.

After the trial court denied Petty's motion for new trial, Petty's prior appellate counsel filed a motion to withdraw as counsel. On October 4, 2022, which was within 30 days of the appealable order in this case, a hearing was held regarding prior appellate counsel's motion to withdraw as counsel, which Petty opposed. At the October 4 hearing, the trial court expressed concerns regarding Petty filing a timely notice of appeal in light of his appellate counsel's withdrawal, stating that "it was suggested you sign a notice of appeal was so that in the event that there is a withdrawal or there is a gap in counsel your time limits which are very rigid were preserved." The trial court indicated that it would grant the motion to withdraw. The trial court then confirmed that Petty understood that he would be handling his appeal pro se, and requested Petty's "permission to go ahead and file" his pro se notice of appeal for him

"so that the 30 days after the entry of the order [on the motion for new trial] . . . doesn't run out." Petty consented, stating "I don't want anything, the time period to run out for me to be able to you know have all my motions filed. I am almost completely ignorant to the law as to filing my own appeals or motions or whatever." The trial court then indicated that it would "take your notice of appeal upstairs and file it in the Clerk of Superior Court's office today to make sure that your time limit is preserved." However, despite the fact that the trial judge receive the notice of appeal and stated it would be filed, Petty's pro se notice of appeal was not filed with the clerk until October 17, 2022. On October 20, 2022, the trial court entered an order granting prior appellate counsel's motion to withdraw. An order appointing a public defender was entered on November 22, 2022. On October 18, 2023, the trial court entered an amended order granting prior appellate counsel's motion to withdraw, clarifying that the withdrawal was effective October 4, 2022.

"[T]he proper and timely filing of the notice of appeal is an absolute requirement to confer jurisdiction upon the appellate court." (Citation, punctuation, and emphasis omitted.) *Davis v. State*, 330 Ga. App. 711, 711 (769 SE2d 133) (2015). A notice of appeal must be filed "within 30 days after entry of the appealable decision

or judgment complained of[.]" OCGA § 5-6-38 (a). Pursuant to OCGA 17-1-1 (d), "[t]he filing of pleadings and other papers with the court shall be made by filing them with the clerk of the court unless the judge permits the papers to be filed with him, in which event he shall note thereon the filing date and transmit them to the office of the clerk." (Emphasis supplied.) "A paper is said to be filed, when it is delivered to the proper officer, and by that officer received, to be kept on file." (Citation and punctuation omitted.) *Hood v. State*, 282 Ga. 462, 464 (651 SE2d 88) (2007).

In this case, the record shows that trial judge received Petty's pro se notice of appeal during the October 4 hearing. The judge obtained Petty's consent to file the notice of appeal on his behalf and represented that the notice of appeal would be filed that same day. In a similar case, *Oller v. State*, 187 Ga. App. 818 (371 SE2d 455) (1988)[1], an indigent, incarcerated defendant sent a letter addressed to the trial judge that expressed his desire to appeal his conviction. The letter was received by the trial

---

[1] The majority opinion in *Oller* held that the trial court did not abuse its discretion in granting the defendant's motion for out-of-time appeal because "any delay in forwarding appellant's letter requesting appeal would not be attributable to the fault of the indigent appellant." *Oller*, 187 Ga. App. at 819 (1). However, our Supreme Court has since held that a trial court that enters the conviction against a defendant lacks authority to grant a motion for an out-of-time appeal. See *Cook v. State*, 313 Ga. 471, 505 (5) (870 SE2d 758) (2022).

7

judge on the 30th day and the judge filed it with the clerk the next day. In a special concurrence, Judge Beasley pointed out that "[t]he basis upon which this court has jurisdiction of this appeal is the defendant's letter . . . to the trial judge" which was received within the 30-day time period. Id. at 824 (Beasley, J., concurring). "Although the judge did not note the date on the document, he established such in the record. Since the notice clearly would have been timely had the judge written on it the date of filing or submitted it to the clerk for filing the same day as it was received, it should be regarded as timely within the circumstances of this case." *Oller*, 187 Ga. App. at 461-462 (Beasley, J., concurring). Here, it is even more clear from the record that the trial court intended to permit Petty to file his notice of appeal with the court on October 4, 2022. It received the notice and stated that it would be filed. We therefore consider the filing date of Petty's notice of appeal to be October 4, 2022, and Petty's notice of appeal was thus timely filed.

2. Petty argues that the trial court erred in admitting serology results because the probative value of the results was substantially outweighed by their prejudicial effect. We disagree.

8

OCGA § 24-4-403 states that "[r]elevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

> The application of the Rule 403 test is a matter committed principally to the discretion of the trial courts, but as we have explained before, the exclusion of evidence under Rule 403 is an extraordinary remedy which should be used only sparingly. The major function of Rule 403 is to exclude matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect.

*Flowers v. State*, 307 Ga. 618, 622–623 (2) (837 SE2d 824) (2020). "Although inculpatory evidence is inherently prejudicial in a criminal case, the risk of some prejudice does not require exclusion." *McCullum v. State*, 318 Ga. 485, 500 n.13 (899 SE2d 171) (2024). "[I]t is only when unfair prejudice substantially outweighs probative value that the rule permits exclusion." *Harris v. State*, 313 Ga. 225, 232 (3) (869 SE2d 461) (2022). On appeal, we review the admission of evidence only for abuse of discretion. *Hammontree v. State*, 283 Ga. App. 736, 739 (3) (642 Se2d 412) (2007).

At trial, a GBI forensic serogolist, Kettiany Robertson, testified that seminal fluid was present on the swabbing taken from M. C.'s mouth. Robertson testified

9

although the sample was "weak" and generated a "faint" positive line on the test, she was confident that it was seminal fluid "due to the fact that the chemical test was positive and this [serological] test was positive, as well." Robertson also testified that the sample was not large enough to undergo subsequent DNA comparison, but that it is common for there not to be enough quantifiable DNA to be able to test due to the sample being used in the serological testing to confirm seminal fluid. This is because people swallow and eat frequently throughout the day, and samples of this nature do not stay in the mouth very long.

Petty argues that probative value of the "weak" positive result "consistent" with seminal fluid that was unable to be connected to Petty through DNA comparison was substantially outweighed by its prejudicial effect. However, as the trial court explained, the evidence was clear that a "weak" sample was a reference to the *amount* of specimen, which explained the inability to find sufficient amounts of DNA for comparison purposes. Accordingly, the evidence showing that seminal fluid was found in M. C.'s mouth, even if the sample was too diluted for DNA comparison, was highly probative to show that a sexual assault had occurred. Thus, while evidence that

seminal fluid was found in a child's mouth is inherently prejudicial, we cannot say that any undue prejudice outweighs its probative value.

3. Petty argues that his trial counsel rendered ineffective assistance of counsel when trial counsel failed to consult with a qualified serology expert and failed to investigate and present evidence of alleged neglect and abuse of the victims by their mother and stepfather, and that the cumulative prejudicial effect of the trial court's error and his trial counsel's deficient performance requires a new trial.

To succeed on these claims, Petty "bears the burden of showing both that trial counsel's performance was deficient and that he suffered prejudice as a result." *Pugh v. State*, 318 Ga. 706, 720 (2) (d) (899 SE2d 653) (2024), citing *Strickland v. Washington*, 466 U. S. 668, 687 (104 SCt 2052, 80 LEd2d 674) (1984).

> To establish deficient performance, [Petty] must show that his counsel performed his duties in an objectively unreasonable way. To eliminate the distorting effects of hindsight, we must consider [Petty's] claim in light of counsel's perspective at the time and indulge a strong presumption that counsel's performance was reasonable. [Petty] bears the burden of overcoming this presumption by showing that no reasonable lawyer would have done what his lawyer did, or would have failed to do what his lawyer did not. To establish prejudice, [Petty] must

11

show a reasonable probability that, but for counsel's deficient performance, the result at trial would have been different.

(Citation and punctuation omitted.) *Pugh*, 318 Ga. at 720 (2) (d). "Because a defendant must show both deficient performance and actual prejudice stemming from the deficiency, an insufficient showing on either one of these prongs exempts an appellate court from the need to address the other prong." *Sims v. State*, 297 Ga. 401, 404 (4) (774 SE2d 620) (2015).

(a) Petty argues that his trial counsel was ineffective because he failed to consult with a qualified serology expert. Although Petty concedes that his trial counsel did consult an "expert in DNA," he argues that his trial counsel should have consulted "an expert in serology."

"The decision on whether to call an expert witness is one of trial strategy, and we will not find ineffectiveness if counsel's strategy and tactics were reasonable at the time." *Bharadia v. State*, 282 Ga. App. 556, 559 (6) (a) (639 SE2d 545) (2006).

At the hearing on Petty's motion for new trial, his trial counsel testified that she was the Chief Public Defender of the Alcovy Judicial Circuit and that she had personally tried 60 or 70 felony jury trials, in addition to supervising others. Petty's

trial counsel testified that she consulted with Dr. Jung Choi, a DNA expert, at Petty's insistence, and that she was able to obtain information from that expert that she then used to cross-examine Robertson at trial. Trial counsel further testified that she chose not to call Dr. Choi as a witness because it wasn't "necessary" and "could potentially be harmful" because the jury may perceive a defense expert as a "hired gun." The trial record reflects that Petty's trial counsel did cross-examine Robertson regarding the strength of the sample, the faintness of the visible test results, and the possibility of a false positive.

Although Petty argues that trial counsel should have gone further and consulted an expert qualified in serology, Petty does not explain how a serology expert's testimony would have differed from the evidence elicited on cross-examination of the State's expert. See *Smith v. State*, 294 Ga. App. 692, 705–706 (10) (f) (670 SE2d 191) (2008) (where appellant "made no proffer at the motion for new trial of what a different expert would have discovered and testified . . . [appellant] cannot show that his trial lawyer performed deficiently"). Moreover, trial counsel's decision to consult Dr. Choi, but not to call him as an expert to rebut Robertson's testimony and instead choosing to thoroughly cross-examine Robertson herself, was reasonable. See *Lawton*

13

*v. State*, 340 Ga. App. 903, 905 (2) (798 SE2d 264) (2017) (trial counsel's decision not to call an expert, but to instead attack the opinion of the State's expert on cross-examination, was not unreasonable).

(b) Petty argues that his trial counsel was ineffective because he failed to investigate and present evidence of alleged neglect and abuse of the victims by their mother and stepfather. We disagree.

"Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." (Citation and punctuation omitted.) *Blalock v. State*, 320 Ga. 694, 704 (d) (911 SE2d 628) (2025). However, "[i]nformed strategic decisions do not constitute ineffective legal assistance." (Citation omitted.) *Phillips v. State*, 277 Ga. 161, 163–164 (b) (587 SE2d 45) (2003).

At the hearing on Petty's motion for new trial, his trial counsel testified that the defense theory relied on Petty's denial of the allegations and that "someone else" had committed the crimes. Trial counsel testified that she requested and received

14

Department of Child and Family Services (DFACS) records and reviewed them, but that she did not recall finding any information that was relevant to Petty's defense. Trial counsel elaborated that while she would have investigated "concern of neglect" from the victims' teachers, "there's also the concern . . . of solidifying that something did happen, in the way of some nature of abuse" that can "highlight that something did happen to them." Trial counsel explained that there is a risk that such evidence "could've added to the State's evidence that something happened" and created sympathy for the victims. Trial counsel also testified that she would not have tried to introduce any information from the DFACS records unless she knew that they would be admissible, an issue of legitimate concern to her.

Given counsel's objectively reasonable concern about the potential harm of introducing evidence from the DFACS records, we cannot say that counsel's strategic decision not to investigate further and present evidence from those records was unreasonable. See *Dority v. State*, 335 Ga. App. 83, 107 (4) (h) (i) (780 SE2d 129) (2015) (trial counsel's performance was not deficient where trial counsel "offered a reason for his decision not to seek additional records"); compare *Darst v. State*, 323 Ga. App. 614, 620-621 (2) (a) (i) (746 SE2d 865) (2013) (trial counsel's performance

15

was deficient where trial counsel offered "no reasonable explanation for his failure to conduct *any investigation* into the availability or contents of the records in order to make an informed determination of whether the information therein would have been more favorable than harmful to [appellant's] defense") (emphasis supplied) (physical precedent only). Accordingly, this claim fails. See *Dority*, 335 Ga. App. at 107 (4) (h) (i).

(c) Petty argues that the cumulative prejudicial effect of the trial court's error and his trial counsel's deficient performance requires a new trial. See *State v. Lane*, 308 Ga. 10, 14 (838 SE2d 808) (2020). However, "[a]ssessing cumulative prejudice is necessary only when multiple errors have been shown, and [Petty] has not established even one instance in which trial counsel was deficient" or where the trial court erred. *Scott v. State*, 309 Ga. 764, 771 (3) (d) (848 SE2d 448) (2020). This claim therefore fails.

*Judgment affirmed. Mercier, C. J., and Dillard, P. J., concur.*